IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

TERRY MCNABB,

     Plaintiff,

v.                                     Civ. No. 21-623 GBW/SCY

JAMES R. LOBB, *et al.*,

     Defendants.

## ORDER GRANTING SUMMARY JUDGMENT IN PART, DENYING SUMMARY JUDGMENT IN PART, AND REMANDING THE CASE TO STATE COURT

THIS MATTER comes before the Court on Defendants' [sic] James R. Lobb and Board of County Commissioners of the County of Union's Motion for Summary Judgment. *See doc. 41.* Having reviewed the Motion and its attendant briefing, *see docs. 43, 45*, and being fully advised in the premises, the Court GRANTS the Motion IN PART as to Plaintiff's § 1983 claims, DENIES the Motion IN PART as to Plaintiff's state law tort claims based upon a declination of supplemental jurisdiction, and REMANDS Plaintiff's First Amended Complaint (*doc. 10*) to the Eighth Judicial District Court, Union County, New Mexico for further proceedings.

## I.    BACKGROUND

This case arises from a criminal complaint filed by Defendant Lobb (the Sheriff of Union County, New Mexico) against Plaintiff in connection with Plaintiff's alleged

possession and use of a generator and tractor owned by the County.  *See doc. 10 at ¶¶*

26-27, 41-82; *doc. 41-4* (charging Plaintiff with one count of embezzlement of the tractor

and one count of larceny of the generator).  On May 23, 2019, the Clayton Magistrate

Court dismissed both charges against Plaintiff for lacking probable cause.  *See doc. 10* at

¶¶ 29, 40; *doc. 17* at ¶¶ 29, 40; *doc. 20* at ¶¶ 29, 40.

Almost two years later, Plaintiff sued Defendant Lobb and Daniel E. Holmes (the

attorney who prosecuted the counts) in their official capacities as well as Union

County,[1] the Union County Sheriff's Department, and the Eighth Judicial District

Attorney's Office in the Eighth Judicial District Court, Union County, New Mexico.  *See*

*doc. 1-1* at ¶¶ 2-10.  Alleging that his criminal prosecution lacked probable cause,

Plaintiff raised three claims: (i) state tort claims against Defendant Lobb, Union County,

and the Union County Sheriff's Department for malicious prosecution under the New

Mexico Tort Claims Act, *see id.* at ¶¶ 43-51; (ii) federal constitutional claims for

prosecution without probable cause in violation of the Fourth and Fourteenth

Amendments against Defendant Lobb, Mr. Holmes, Union County, the Union County

Sheriff's Department, and the Eighth Judicial District Attorney's Office under 28 U.S.C.

§ 1983, *see id.* at ¶¶ 52-64; and (iii) state constitutional claims against Defendant Lobb

---

[1] Union County is listed as a party in the caption of Plaintiff's Complaint, *see doc. 1-1* at 1, but not named as a party in that Complaint, *see id.* at ¶¶ 1-13.  The Court does not reach the issue of whether Plaintiff properly joined Union County since Plaintiff dropped Union County from the case in his Amended Complaint.  *See doc. 10.*

and Mr. Holmes for violating the Fourth Amendment of the New Mexico Constitution, *see id.* at ¶¶ 67-82 (not specifying the state law cause of action).  After Plaintiff's Complaint was removed to this Court, *see doc. 1*, he amended it to substitute Defendant Board of County Commissioners of the County of Union ("BCCCU") for Union County and the Union County Sheriff's Department, *see doc. 10*.  Then, Plaintiff dismissed his state constitutional claims and all claims against Mr. Holmes and the Eight Judicial District Attorney's Office.  *See doc. 24*.

On February 22, 2022, Defendants Lobb and BCCCU (the remaining Defendants) filed the instant Motion for Summary Judgment on Plaintiff's remaining claims.  *See doc. 41*.  Plaintiff responded in opposition on March 8, 2022.  *See doc. 43*.  Briefing was complete on March 22, 2022, *see doc. 46*, with the filing of Defendants' reply, *see doc. 45*.

## II.  LEGAL STANDARDS

Under Federal Rule of Civil Procedure 56(a), the Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The movant bears "the initial burden to show 'that there is an absence of evidence to support the nonmoving party's case.'"  *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).  Once the movant meets this burden, the non-moving party is required to designate specific facts showing that "there are . . . genuine factual issues that properly can be resolved

only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). Summary judgment is appropriate only "where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Penry v. Fed. Home Loan Bank of Topeka*, 155 F.3d 1257, 1261 (10th Cir. 1998) (internal brackets omitted) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

When making this determination, the Court keeps two principles in mind. First, while the Court must draw all "reasonable inferences … in the light most favorable to the non-moving party*," id*. at 1261, that party's "version of the facts must find support in the record," *Thomson v. Salt Lake Cnty.*, 584 F.3d 1304, 1312 (10th Cir. 2009). Second, the Court's role is not to weigh the evidence or decide any issues of credibility, but to assess the threshold issue of whether a genuine issue exists as to material facts requiring a trial. *See Liberty Lobby*, 477 U.S. at 249, 255. "An issue is 'genuine' if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way. An issue of fact is 'material' if under the substantive law it is essential to the proper disposition of the claim." *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (internal citation omitted).

## III.    UNDISPUTED MATERIAL FACTS

Based on the parties' briefing and the record before it, the Court finds the following facts material and undisputed:

1. On April 2, 2019, Defendant Lobb filed a Criminal Complaint against Plaintiff, charging him with one count of embezzlement for "unlawfully and intentionally tak[ing] a Tractor belonging to the County of Union, State of New Mexico and us[ing] the tractor for his own personal gain" and one count of larceny for "unlawfully and intentionally tak[ing] Union County, State of New Mexico property without permission, To Wit: a camoflauge [sic] colored generator." *Doc. 41-4* at 1.

2. On April 10, 2019, Defendant Lobb served Plaintiff with a copy of the Criminal Complaint and a Summons.  Defendant's Statement of Undisputed Material Facts ("DSUMF") 20 (citing *doc. 41-1* at ¶ 19); Plaintiff's Response to Alleged Undisputed Material Fact ("PRAUMF") 20 (not disputing DSUMF 20).

3. The Summons ordered Plaintiff to appear at the Clayton Magistrate Court on April 22, 2019, under penalty of arrest.  *Doc. 41-5.*

4. At an arraignment hearing on April 22, 2019, the Clayton Magistrate Court released Plaintiff on personal recognizance on the condition that he agree "not to possess or consume alcohol or enter liquor establishments; not to violate any federal, state or local criminal law; [and] to maintain contact with [his] attorney." *Doc. 41-6.*

5. At a preliminary hearing on May 23, 2019, the Clayton Magistrate Court found no probable cause for the charges in the Criminal Complaint and dismissed them. *Doc. 10* at ¶¶ 29, 40; *doc. 17* at ¶¶ 29, 40; *doc. 20* at ¶¶ 29, 40.

6. Plaintiff was never arrested, incarcerated, or otherwise taken into custody based upon the charges in the Criminal Complaint. DSUMF 20 (citing *doc. 41-1* at ¶ 19); PRAUMF 20.

## IV.   ANALYSIS

Based on the above undisputed material facts, Defendants Lobb and BCCCU are entitled to summary judgment on Plaintiff's § 1983 claims. These claims arise from Defendant Lobb—a purported policymaker for BCCCU, *see doc. 43* at 8—charging Plaintiff with larceny and embezzlement, allegedly without probable cause, *see doc. 10* at ¶¶ 52-61. In the Tenth Circuit, these claims fall under the exclusive ambit of the Fourth Amendment. *See Becker v. Kroll*, 494 F.3d 904, 918-19 (10th Cir. 2007). No reasonable factfinder may find that charging Plaintiff with these crimes violated this Amendment since Plaintiff was never seized in connection with these charges. Having resolved Plaintiff's federal claims, the Court ceases to exercise supplemental jurisdiction over the state tort claims that remain as they involve different factual questions than those material to Plaintiff's § 1983 claims.

A. PLAINTIFF'S § 1983 CLAIMS FOR PROSECUTION WITHOUT PROBABLE
    CAUSE

Analysis of Plaintiff's § 1983 claims for alleged criminal prosecution without

probable cause begins with the Supreme Court's fractured decision in *Albright v. Oliver*,

510 U.S. 266 (1994).  There, Illinois authorities issued an arrest warrant for Mr. Albright,

who subsequently surrendered to a police detective and was arrested.  *Albright*, 510 U.S.

at 268.  Authorities released Mr. Albright on bond and the condition that he not depart

the state without permission of the court.  *Id.*  At a preliminary hearing, the court found

probable cause to bind Mr. Albright over for trial based on the police detective's

testimony, *see id.* at 269, which discussed evidence that an informant had provided him,

but not the informant's unreliability, *id.* at 298 (Stevens, J., dissenting).  Later, at a

pretrial hearing, the court dismissed the only charge against Mr. Albright for not stating

an offense under state law.  *Id.* at 269.  Mr. Albright then sued the police detective for,

*inter alia*, depriving him of substantive due process under the Fourteenth Amendment

by subjecting him to criminal prosecution without probable cause.  *Id.*  The district court

dismissed the due process claim for failing to state a claim and the Seventh Circuit

affirmed.  *Id.*

The *Albright* plurality—composed of Chief Justice Rehnquist and Justices

O'Connor, Scalia, and Ginsburg—affirmed the dismissal, stating that a claim for

criminal prosecution without probable cause implicates the Fourth Amendment's

protection against unreasonable seizures, not Fourteenth Amendment substantive due

process.  *See* 510 U.S. at 271-74 (emphasizing that "in … criminal procedure, the specific guarantees of the various provisions of the Bill of Rights embodied in the first 10 Amendments to the Constitution" displace "the more generalized notion of substantive due process").  Concurring in judgment, Justice Souter declined to rule out a substantive due process claim ever arising from prosecution without probable cause, suggesting that a Fourteenth Amendment claim may exist in "exceptional cases" where "substantial deprivation of liberty [arises] from the mere initiation of prosecution" independent from any concomitant Fourth Amendment seizure.  *See id.* at 289-91 (Souter, J., concurring).  Concurring in judgment, Justice Kennedy, joined by Justice Thomas, opined that due process is the appropriate framework for analyzing a § 1983 claim for "malicious initiation of a baseless criminal prosecution" but § 1983 does not provide a cause of action for this claim where "injury has been caused not by a state law, policy, or procedure, but by a random and unauthorized act that can be remedied by state law," such as a tort for malicious prosecution.  *See id.* at 281, 285 (Kennedy, J., concurring).  Finally, writing separately in addition to joining the plurality, Justice Ginsburg adopted a non-custodial definition of a Fourth Amendment seizure that embraced not only an arrest but also release on bail, the issuance of a summons to appear in court, and restrictions on out-of-state travel.  *See id.* at 277-79 (Ginsburg, J., concurring).

The next and final stop on the Court's brief journey through caselaw is *Becker v. Kroll*, 494 F.3d 904 (10th Cir. 2007).  There, a neurologist was investigated and prosecuted for Medicaid fraud but not arrested or otherwise physically restrained in connection with the investigation.  *See Becker*, 494 F.3d at 909, 915.  During the investigation, members of the anti-fraud task force committed various misconduct: (i) the lead prosecutor twice met with the neurologist and threatened her with criminal prosecution if she did not agree to a monetary settlement, *id.* at 910; (ii) the lead prosecutor filed a civil suit against the neurologist "as part of settlement discussions" but then dismissed it two weeks later "when settlement failed to materialize," *id.*; (iii) members of the task force failed to document meetings with the neurologist, including the two meetings in which the prosecutor threatened her with criminal prosecution, *id.* at 911; (iv) the task force failed to document in the neurologist's case file an independent consultant's opinion that the neurologist's bills did not contain irregularities, resulting in that opinion not being disclosed to the neurologist or presented at her preliminary hearing as exculpatory evidence, *see id.* at 910-11; and (v) the investigators failed to file a return of service with the court for a subpoena for the neurologist's billing records as state law required, *id.* at 911.

Eventually, a new prosecutor took over the case and filed criminal charges against the neurologist based in part on an affidavit signed by one of the investigators. *Id.* at 910-11.  At the preliminary hearing, the prosecution presented evidence in support

of the charges but not the exculpatory opinions of the independent consultant. *Id.* at

911.  The Court found the evidence sufficient to bind the neurologist over for trial, *id.*,

but never required her to post bond, *see id.* at 916.

Shortly thereafter, the prosecutor learned of the third, fourth, and fifth

irregularities in the investigation and that the affiant investigator had not obtained

billing records from the neurologist voluntarily, as he had led the new prosecutor to

believe. *See id.* at 911.  Due to these irregularities, the prosecutor dismissed the criminal

case against the neurologist, who subsequently brought § 1983 claims against the

investigators and the initial prosecutor for, *inter alia*, denial of due process, malicious

prosecution, and denial of substantive due process. *Id.* at 912.

After the trial court granted defendants summary judgment on all claims and the

neurologist appealed, the Tenth Circuit confronted some questions left open in *Albright*.

The Tenth Circuit rejected Justice Ginsberg's non-custodial definition of a seizure in

favor of a traditional one limited to arrest and incarceration. *See id.* at 915-16.  As the

neurologist was not seized in this manner, the Tenth Circuit then affirmed the trial

court's dismissal of the neurologist's Fourth Amendment claim. *See id.* at 914-16

(holding that temporal, financial, and reputational burdens arising from having to

travel to and attend meetings during a state agency investigation, pay legal costs, and

face criminal charges did not seize the neurologist).

As for substantive due process, the Tenth Circuit read *Albright* to hold that "no §
1983 claim will arise from filing criminal charges without probable cause under the
substantive due process protections of the Fourteenth Amendment."  *Id.* at 918.  The
Tenth Circuit also acknowledged Justice Souter's suggestion that substantive due
process violations may arise from "initiating an unwarranted prosecution that is
dismissed before trial" in exceptional cases but held that the neurologist's prosecution
was not one of these cases as its irregularities were not so outrageous as to shock the
conscience.  *See id.* at 922-24 (finding that the task force's investigatory tactics and
failure to disclose exculpatory evidence did not violate the neurologist's substantive
due process rights).

Finally, regarding procedural due process, the Tenth Circuit held that no claim
for procedural due process "will arise from filing criminal charges without probable
cause" that are subsequently dismissed after a preliminary hearing but before trial.  *See
id.* at 918-19 (finding the reasoning of the *Albright* plurality "regarding substantive due
process equally persuasive with regard to the Fourteenth Amendment's procedural
component").  Assuming without deciding that other claims of procedural due process
may arise from other pre-trial deprivations of liberty, the Tenth Circuit adopted the
reasoning of Justice Kennedy's concurrence, holding that no such claims exist where
pre-deprivation process could not have anticipated and prevented a state actor's
random and unauthorized violation of procedural due process and state law provides

11

an adequate post-deprivation remedy for that violation, such as a tort for malicious

prosecution.  *See id.* at 920-21 (citing, *inter alia, Albright*, 510 U.S. at 284 (Kennedy, J.,

concurring)).

      1.  *Plaintiff's Fourth Amendment Claim Against Defendant Lobb*

*Becker* forecloses Plaintiff's § 1983 claim against Defendant Lobb in his official

capacity for charging Plaintiff with embezzlement and larceny without probable cause

in violation of his Fourth Amendment right to be free from unreasonable seizure.  Based

on the undisputed material facts, Plaintiff was never arrested or otherwise physical

detained in connection with the embezzlement or larceny charges.  *See* Undisputed

Material Fact ("UMF") 6.  The only restraints on Plaintiff's liberty during his criminal

prosecution were prohibitions on consuming alcohol, entering liquor establishments,

and committing other crimes and a requirement that he maintain contact with his

attorney.  UMF 4.  These restraints do not amount to a seizure under the Tenth Circuit's

definition of the term.  *See Becker*, 494 F.3d at 915 (limiting a seizure to arrest or

incarceration)

      Plaintiff argues that *Becker* does not foreclose a seizure arising from the issuance

of a summons requiring him to appear in court.  *See doc. 43* at 9-10 (noting that, unlike

him, the neurologist "in *Becker* 'was not required to appear in court'" (quoting 494 F.3d

at 916)).  In subsequent cases, though, the Tenth Circuit has not confined *Becker* in this

fashion.  Instead, it has embraced *Becker*'s larger holding that arrest or other custodial

detention is a necessary element of a Fourth Amendment claim for criminal prosecution without probable cause. *See Mata v. Anderson*, 635 F.3d 1250, 1254 (10th Cir. 2011) (travel restrictions are not a seizure); *Nielander v. Bd of Cnty. Comm'rs of Republic*, 582 F.3d 1155, 1165 (10th Cir. 2009) (a criminal summons is not a seizure); *Martinez v. Carr*, 479 F.3d 1292, 1295, 1299 (10th Cir. 2007) (a choice between arrest or signing a citation containing a promise to appear later for trial under penalty of arrest is not a seizure). Each of these cases implicitly rejects Plaintiff's argument that a criminal summons plus the requirement to appear in court equals a seizure. To the extent that such a holding was not made explicitly in those cases, it was in an unpublished, but still persuasive, opinion. *See Lewis v. Rock*, 48 F. App'x 291, 294 (10th Cir. 2002).

   2. *Plaintiff's Fourteenth Amendment Claim Against Defendant Lobb*

   *Becker* also forecloses Plaintiff's § 1983 claims against Defendant Lobb for bringing a criminal complaint against him without probable cause in violation of his Fourteenth Amendment right to not be deprived of liberty without due process of law. Neither Plaintiff's Amended Complaint nor his briefing specifies whether these claims are for substantive or procedural due process. Both forms of the claims, though, are barred.

   *Becker* expressly precludes a substantive due process claim arising from the initiation of criminal proceedings without probable cause. *See* 494 F.3d at 918 ("[N]o § 1983 claim will arise from filing criminal charges without probable cause under the

substantive due process protections of the Fourteenth Amendment.").  Plaintiff's argument otherwise relies on the carve out for exceptional cases in Justice Souter's concurrence, *see doc. 43* at 9, but ignores both how the Tenth Circuit treated that concurrence in *Becker*.

As noted earlier, Justice Souter's concurrence suggests that a substantive due process claim may arise from the filing of an unwarranted criminal complaint in an exceptional case where substantial deprivation of liberty stems only "from the initiation of a baseless prosecution" and not from any related seizure.  *Albright*, 510 U.S. at 289 (Souter, J., concurring).  *Albright* was not an exceptional case since, there, Mr. Albright had been seized and "[n]one of [his] injuries [was] alleged to have followed from the issuance of the formal instrument of prosecution, as distinct from the ensuing assertion of custody."  *Id.  Becker* presented a case which could fit within this gap: the neurologist's alleged injuries all arose from facing prosecution without probable cause as she was never seized (as the Tenth Circuit defines the term).  *See* 494 F.3d at 916. Nonetheless, the Tenth Circuit held this prosecution did not violate the neurologist's substantive due process rights, closing the door left open by Justice Souter's concurrence for claims arising solely from the filing of a criminal complaint without probable cause.  *See id.* at 918-19 ("Under the facts of this case, where criminal charges were brought but dismissed before trial, [the neurologist] must allege a violation of the Fourth Amendment in order to proceed on a theory of § 1983 malicious prosecution.");

Case 1:21-cv-00623-GBW-SCY   Document 50   Filed 06/02/22   Page 15 of 19

*cf. id.* at 922-24 (analyzing investigatory misconduct and withholding of exculpatory evidence, but not prosecution without probable cause, as claims left open by Justice Souter's concurrence).   To the extent that the "substantive due process" door remains open at all for a malicious prosecution claim in the Tenth Circuit after *Becker*, this case does not, in some exceptional way, demonstrate the "degree of outrageousness and a magnitude of potential or actual harm that is truly conscience shocking" required for such a theory of liability.   *See id*. at 923 (quoting *Livsey v. Salt Lake Cnty.*, 275 F.3d 952, 957-58 (10th Cir. 2001), and *Uhlrig v. Harder*, 64 F.3d 567, 573 (10th Cir. 1995)).

Turning to procedural due process, as noted earlier, *Becker* also holds that filing criminal charges without probable cause does not violate procedural due process if the charges are later dismissed before trial.[2]   *See id.* at 919.   Even if that were not the case, the requirements of due process are satisfied where the deprivation of liberty arises from a state actor's unauthorized and unanticipated actions rather than a state policy, procedure, or process, and an adequate post deprivation remedy exists.   *See Myers v. Koopman*, 738 F.3d 1190, 1193 (10th Cir. 2013).

---

[2] The Tenth Circuit does recognize procedural due process claims arising from other misconduct during criminal prosecution.  *See Mondragon v. Thompson*, 519 F.3d 1078, 1083 (10th Cir. 2008) (holding that an individual arrested and prosecuted based on a forged arrest warrant has a procedural due process claim once legal process has ratified the arrest and prosecution); *Pierce v. Gilchrist*, 359 F.3d 1279, 1285-86 (10th Cir. 2004) (holding that individual accrues a procedural due process claim for being arrested and prosecuted based on fabricated evidence "at some point after arrest, and certainly by the time of trial"). Plaintiff, though, does not allege that Defendant Lobb committed misconduct other than "bringing … a criminal complaint against [him] without probable cause."  *See doc. 10* at ¶¶ 52-66.

These criteria are met here.  Plaintiff neither alleges nor presents evidence that

Defendant Lobb charged him with embezzlement and larceny pursuant to some county

policy of initiating criminal prosecutions without probable cause.  *See doc. 10* at ¶¶ 14-

40, 52-66; *cf. doc. 43* at 8 (arguing that Defendant BCCCU is liable under § 1983 since

Defendant Lobb is a policymaker, not because it has a policy of filing criminal

complaints without probable cause).  New Mexico recognizes a tort for malicious abuse

of process, *see Durham v. Guest*, 204 P.3d 19, 26 (N.M. 2009) (reaffirming the merger of

malicious prosecution and abuse of process into a single tort), which provides an

adequate post deprivation remedy for being prosecuted without probable cause, *see,*

*e.g.*, *Cordova v. City of Albuquerque*, 816 F.3d 645, 662 (10th Cir. 2016) (Gorsuch, J.,

concurring); *Rodriguez v. Smith*, 15cv681 WPL/LF, 2017 WL 11450998, at *9 (D.N.M. Apr.

7, 2017); *Benavidez v. Shutiva*, 350 P.3d 1234, 1243 (N.M. Ct. App. 2015).

    3.  *Plaintiff's § 1983 Claim Against Defendant BCCCU*

By barring all of Plaintiff's constitutional claims against Defendant Lobb, *Becker*

also bars Plaintiff's § 1983 claims against Defendant BCCCU.[3]  County boards of

commissioners are liable under § 1983 only where a constitutional injury committed by

a county employee or agent is caused by county policy or custom.  *See Waller v. City &*

*Cnty. of Denver*, 932 F.3d 1277, 1283 (10th Cir. 2019).  Defendant Lobb did not cause

---

[3] Moreover, Plaintiff's § 1983 claim against Defendant BCCCU is redundant because his claims against
Defendant Lobb are in Defendant Lobb's official capacity.  *See Taylor v. Meacham*, 82 F. 3d 1556, 1564 (10th
Cir. 1996) (holding that a suit against a sheriff in his official capacity is simply a suit against the county).

Plaintiff constitutional injury by charging him for embezzlement and larceny even if the

charges lacked probable cause.  Therefore, Defendant BCCCU incurs no § 1983 liability

from this prosecution.  *See Taylor v. Meacham*, 82 F.3d 1556, 1564 (10th Cir. 1996)

(holding that § 1983 claims against a county must be dismissed where the employee had

committed no constitutional violation).

B.  STATE TORT CLAIMS FOR MALICIOUS PROSECUTION

Defendants urge the Court to retain supplemental jurisdiction over, and grant

them summary judgment on, Plaintiff's state law tort claims for malicious prosecution.

*See doc. 41* at 2 & n.3; *id.* at 18-21.  The Court has supplemental jurisdiction over state

law claims that are so related to other claims over which the Court has original

jurisdiction (such as federal question claims) that they form part of the same case or

controversy under Article III of the United States Constitution.  *See* 28 U.S.C. § 1367(a).

The exercise of supplemental jurisdiction is discretionary, *Carnegie-Mellon Univ. v.*

*Cohill*, 484 U.S. 343, 350 (1988), and requires the Court "to consider 'judicial economy,

convenience, fairness, and comity.'"  *Nielander*, 582 F.3d at 1172 (quoting *id.*); *see also* 28

U.S.C. § 1367(c) (allowing the Court to decline to exercise supplemental jurisdiction

where a claim "raises a novel or complex issue of State law" or "substantially

predominates over the claim or claims over which [it] has original jurisdiction," when

the Court "has dismissed all claims over which it has original jurisdiction" or "in

exceptional circumstances [for] other compelling reasons").  "When all federal claims

have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims." *Smith v. City of Enid ex rel. Enid City Comm'n*, 149 F.3d 1151, 1156 (10th Cir. 1998).

The Court declines to retain supplemental jurisdiction over Plaintiff's remaining state law tort claims. Proceedings in this case are advanced. *See doc. 27* (setting discovery and dispositive motion deadlines that have passed). The Court, though, has dismissed all federal claims without reaching a key factual issue underlying the remaining state law claims: did Defendant Lobb have probable cause to charge Plaintiff with embezzlement and larceny. Comity dictates that a state court should resolve whether a genuine issue of material fact exists to issues that are material only to state law claims when only state law claims remain.[4] Therefore, the Court remands Plaintiff's state law claims to state court. *See* 28 U.S.C. § 1447(c) (requiring *sua sponte* remand for lack of subject matter jurisdiction any time before final judgment).

## V.    CONCLUSION

For the reasons above, the Court GRANTS Defendants' Motion for Summary Judgment (*doc. 41*) IN PART as to Plaintiff's § 1983 claims, DENIES the Motion IN PART as to Plaintiff's state law tort claims based upon a declination of supplemental

---

[4] The issue of probable cause would be material to Plaintiff's § 1983 claims if he had been seized as the Tenth Circuit defines the term. Since Plaintiff was not seized in this manner, the Court declines to reach the issue.

jurisdiction, and REMANDS this case to the Eighth Judicial District Court, Union County, New Mexico for further proceedings.

**IT IS SO ORDERED.**

_____
GREGORY B. WORMUTH
UNITED STATES MAGISTRATE JUDGE
**Presiding by consent**